IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

SAIDER DAVID SANTIAGO HELBRUM

        Petitioner,

  vs.

CORY WILLIAMS, Chief Jail Administrator,
Polk County Jail; SAMUEL J. OLSON, Field
Office Director of Enforcement and Removal
Operations, St. Paul Field Office, Immigration
and Customs Enforcement; TODD M. LYONS,
Acting Director of Immigration and Customs
Enforcement; KRISTI NOEM, Secretary of
Homeland Security; and PAMELA BONDI,
United States Attorney General,

        Respondents.

Case No. 4:25-cv-00349-SHL-SBJ

**ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR
WRIT OF HABEAS CORPUS**

## I.    INTRODUCTION.

8 U.S.C. § 1226(c)(1)(E) makes detention mandatory when an alien in removal proceedings "is charged with," "is arrested for," "is convicted of," "admits committing," or "admits having committed" a list of enumerated offenses, including theft. Petitioner Saider David Santiago Helbrum is an asylum-seeker from Colombia who was arrested and charged in early July 2025 with fifth degree theft for allegedly stealing items from Walmart valued at $76.11. Immediately following his charges, federal immigration officials took him into custody. Petitioner denies having stolen anything, however, and the charges against him were dismissed with prejudice within three weeks of being filed. Nonetheless, federal officials argue that he remains subject to mandatory detention; in their view, a person "is charged with" theft once-and-for-all when charges are filed even if those charges are later dismissed with prejudice.

The Court disagrees. After charges are dismissed, it is no longer accurate to say that a person "is charged with" theft (present tense). Accordingly, Petitioner is not subject to mandatory detention merely because he was charged with a crime (past tense) that has now been dismissed with prejudice. The Court therefore GRANTS IN PART his Petition for Writ of Habeas Corpus

and DIRECTS Respondents to provide Petitioner an individualized bond hearing before the Executive Office of Immigration Review ("EOIR"), Immigration Court, within seven days.

## II.    FINDINGS OF FACT.

The material facts are not in dispute. Petitioner is a citizen of Colombia who arrived in the United States on or about May 10, 2024. (ECF 1-1, p. 4.) On May 12, 2024, he was placed in removal proceedings. (Id.) He was released the same day on a recognizance bond pursuant to section 236 of the Immigration and Naturalization Act, which is codified at 8 U.S.C. § 1226. (ECF 1-2, p. 2.) At some point thereafter, Petitioner apparently moved to Iowa and obtained a valid work permit. (ECF 12-7, ¶ 16.)

On July 9, 2025, Petitioner was arrested at a Walmart store in Des Moines, Iowa, ostensibly for leaving the store without paying for all the items in his shopping cart. (ECF 12-7, ¶ 13.) Petitioner denies having stolen anything and asserts that he "believe[s] that every item in our shopping cart was properly scanned and purchased." (Id., ¶ 12.) Nonetheless, he was charged in Iowa state court with fifth degree theft based on an alleged loss amount of $76.11. (ECF 1, ¶ 23.) Later in July, the State moved to dismiss the charges with prejudice. (ECF 1-4, p. 2.) On July 29, 2025, the Iowa District Court for Polk County entered an Order of Dismissal granting the State's motion and dismissing the charges against Petitioner with prejudice. (Id.)

During the intervening period, on July 11, 2025, Petitioner was taken into custody by agents with U.S. Immigrations and Customs Enforcement ("ICE") pursuant to a warrant. (ECF 1-3, p. 2; ECF 10-1, p. 1.) He appeared before the Immigration Court on August 6, 2025, for a "master calendar" hearing, which is akin to an initial appearance. (ECF 1[1], ¶ 27.) Petitioner, then proceeding pro se, informed the Immigration Judge that the theft charge against him had been dismissed. (Id., ¶ 29.) The Immigration Judge directed him to bring evidence of the dismissal to his next hearing, scheduled for August 20, 2025. (Id.) Petitioner appeared for the August 20 hearing with pro bono counsel, who presented evidence to the Immigration Judge regarding dismissal of the theft charges and Petitioner's lack of flight risk or dangerousness. (Id., ¶ 30.)

In a written ruling on the same date, the Immigration Judge acknowledged that Petitioner's criminal theft charges had been dismissed. (ECF 10-2, p. 1.) Nonetheless, the Immigration Judge

---

[1] In a few instances, the Court is citing to Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (ECF 1.) Although this pleading was not formally offered or admitted at the evidentiary hearing on September 24, 2025, the Court is citing to it for facts that help fill gaps in the record regarding the timeline of events. None of these facts are material to the outcome.

concluded that Petitioner remained subject to mandatory detention based on what the Judge characterized as a "plain re[a]ding of INA § 236(c)(1)(E) [8 U.S.C. § 1226(c)(1)(E)]." In the Immigration Judge's view, "the respondent[']s arrest for theft, which took place after January 29, 2025, triggers the application of the Laken Riley Act even if it was dismissed." (Id.)

Petitioner seeks a writ of habeas corpus ordering, among other things, that he be immediately released or, at least, granted an individualized bond hearing by the EOIR pursuant to 8 U.S.C. § 1226(a), not § 1226(c) or § 1225(b). (ECF 1, pp. 16–17.) The Federal Defendants[2] resist on three grounds: (i) the Court lacks jurisdiction over Petitioner's claims; (ii) detention is mandatory irrespective of the proper interpretation of § 1226(c)(1)(E); and (iii) the Immigration Judge correctly interpreted § 1226(c)(1)(E). (ECF 9.) Polk County Chief Jail Administrator Cory Williams takes no position. (ECF 13.)

## III. HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

## IV. LEGAL ANALYSIS.

### A. The Court Has Jurisdiction Over Petitioner's Claims.

The Federal Defendants argue, as a threshold matter, that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g), (a)(5), and (b)(9) to adjudicate Petitioner's case. (ECF 9, pp. 4–5.) Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This provision applies "notwithstanding any other provision of law

---

[2] The "Federal Defendants" include Samuel J. Olson, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; Kristi Noem, Secretary of Homeland Security; and Pamela Bondi, United States Attorney General.

(statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9). The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation proceedings, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.

Federal officials have raised this argument in recent months in cases similar to this one. The argument has been repeatedly rejected. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411, at *5–8 (D. Minn. Aug. 15, 2025); *Aditya W.H.*, 782 F. Supp. 3d at 705–06. The Court agrees with these well-reasoned decisions and will not repeat their analysis in its entirety. It boils down to two things:

First, the United States Supreme Court has interpreted the jurisdiction-stripping provision in § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 2025 WL 2374411, at *5–6 (discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of

4

"mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

In arguing otherwise, the federal officials in another recently-decided case in this Court relied on language from *Jennings* suggesting that courts might not have jurisdiction when aliens "challeng[e] the decision to detain them in the first place." *Id.* at 294–95. This is not, however, what Petitioner is challenging. He appears to admit that ICE had the authority to take him into custody when he was arrested and charged with fifth degree theft. His challenge focuses on whether ICE can *keep* him in custody for the rest of the removal proceeding without so much as a bond hearing following the dismissal with prejudice of the theft charge. The Supreme Court has concluded that lower courts have jurisdiction over claims of this nature when they revolve around the proper interpretation of a federal statute. *See Jennings*, 583 U.S. at 295; *Nielsen*, 586 U.S. at 402. As this is precisely what is at issue here, jurisdiction exists to review Petitioner's claims.

The Federal Defendants do not appear to be arguing that Petitioner has failed to exhaust administrative remedies. Even if they had made this argument, however, the Court would conclude that exhaustion is not required. Absent a writ of habeas corpus, Petitioner's only avenue of appeal would be to the Board of Immigration Appeals ("BIA"). Earlier this month, however, the BIA held that aliens like Petitioner who are in removal proceedings are subject to mandatory detention under § 1225 irrespective of the proper interpretation of § 1226(c)(1)(E)(ii). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (Sept. 5, 2025). An appeal therefore would have no chance of changing Petitioner's release status but rather would simply delay resolution of his habeas petition. Exhaustion is not required in these circumstances. *See Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) (declining to require exhaustion in similar circumstances).

    B.  *Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225.*

The Government next argues that Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225. Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 287–88 (quoting 8 U.S.C. § 1182). Petitioner by contrast, argues that federal officials have at all relevant times treated him as being governed

by § 1226(a), which—subject to certain mandatory detention provisions discussed in the next section—makes detention discretionary for "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289; *see also Hasan*, 2025 WL 2682255, at *6. Petitioner argues that the Federal Defendants cannot, at this late stage, suddenly begin claiming he is subject to mandatory detention under § 1225 after all.

As a threshold matter, the Court rejects the Federal Defendants' suggestion that Petitioner is an "applicant for admission" merely because he "is in the country without legal status." *Brito Barrajas v. Noem*, No. 4:25-cv-00322, 2025 WL 2717650, at *4 (S.D. Iowa Sept. 23, 2025); *Hasan*, 2025 WL 2682255, at *5–9; *Romero v Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.* Indeed, it is especially difficult to square the Federal Defendants' interpretation of § 1225 with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See id.*; *Romero*, 2025 WL 2403827, at *11. Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless. This is not how statutes are to be interpreted. Indeed, "one of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 2025 WL 2682255, at *8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Granted, there is another layer to the analysis given that Petitioner turned himself in to federal agents within two days of arriving in the United States in May 2024. (ECF 1, ¶¶ 18–19.) At that time, he arguably could have been treated as an "applicant for admission" subject to mandatory detention under § 1225(b)(2)(A). But that is not how federal officials chose to proceed. Instead, they released Petitioner "[i]n accordance with Section 236 of the Immigration and Nationality Act" (i.e., 8 U.S.C. § 1226) and on his "own recognizance." (ECF 12-3.) His Notice to Appear similarly described him as "an alien present in the United States" and not an "arriving alien." (ECF 12-2.) This is consistent with him being governed by § 1226, not § 1225. *See Martinez*

6

*v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *5–8 (D. Mass. July 24, 2025) (holding in legally indistinguishable circumstances that alien was governed by § 1226).

Federal officials have continued to treat Petitioner as being governed by § 1226 since then. The arrest warrant issued on July 11, 2025, states that it is authorized "pursuant to section[] 236 … of the Immigration and Nationality Act." (ECF 12-4.) Likewise, the Order of the Immigration Judge dated August 20, 2025, states that Petitioner "is subject to mandatory detention under the Laken Riley Act." (ECF 10-2.) This is a reference to § 1226, not § 1225. Accordingly, federal officials' treatment of Petitioner since his arrival in the United States "unequivocally demonstrates he is detained pursuant to § 1226(a)." *See Hasan*, 2025 WL 2682255, at *7; *see also Martinez*, 2025 WL 2084238, at *5–8; *Campos Leon v. Forestal*, --- F. Supp. 3d ----, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025). It follows that he is not subject to mandatory detention under § 1225(b)(2)(A).

> ### C. The Laken Riley Act Does Not Make Detention Mandatory When Charges Are Dismissed Without a Conviction or Admission of Guilt.

Because Petitioner's removal proceedings are not governed by § 1225, the question turns to whether detention is mandatory under § 1226(c)(1), which, as relevant here, states:

> The Attorney General shall take into custody any alien who—
>
> …
>
> (E) (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Section 1226(c)(1)(E) was added in early January 2025 as part of the Laken Riley Act.

Petitioner does not dispute that § 1226(c)(1)(E)(ii) required federal officials to take him into custody when he was arrested for and charged with stealing items from Walmart. The language of the statute is unambiguous in that regard, stating that the Attorney General "shall take into custody any alien who … is charged with [or] is arrested for … acts which constitute the essential elements of any … theft." *Id.* Accordingly, the statute required Petitioner to be taken into custody

after he was arrested and charged with fifth degree theft. The disputed issue is whether it requires him to *remain* in custody without the possibility of bond now that the theft charges have been dismissed without a conviction or admission of wrongdoing.

On that issue, there are two potential interpretations of the statute. The first—which the Federal Defendants urge the Court to adopt—is that the ultimate disposition of the charge is irrelevant: once a person has been charged with one of the enumerated offenses, the Attorney General has no authority to do anything except keep the person in custody for the duration of removal proceedings. The second interpretation, which Petitioner prefers, is that detention is no longer mandatory once the charges are dismissed.

The plain language of § 1226(c)(1)(E)(ii) supports Petitioner's position. As relevant here, it requires detention of a person who "is charged with" one of the enumerated offenses, including theft. The use of the present tense is conspicuous and important. *See Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("'[T]o ascertain a statute's temporal reach,' this Court has 'frequently looked to Congress' choice of verb tense." (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)). Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person "is charged with" that crime, present tense. By using the present tense, § 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute. *See Stanley*, 145 S. Ct. at 2064 (rejecting interpretation of statute that failed to attach significance to Congress's use of the present tense).

This interpretation is supported by the fact that section 1226(c)(1)(E)(ii) also makes detention mandatory for a person who "is convicted of" an enumerated offense. Because a person cannot be "convicted" of an offense without first being "charged" with it, it would not make sense to interpret the statute as treating the mere fact of a charge as triggering mandatory detention for the remainder of the removal proceeding regardless of whether the person is ultimately convicted. Such an interpretation would make the words "is convicted of" superfluous, thus violating one of the "most basic interpretive canons" of statutory interpretation. *Corley*, 556 U.S. at 314. Indeed, the fact that "is charged with" and "is convicted of" arise in the very same legislative enactment is especially important because "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

8

The plain-language interpretation of § 1226(c)(1)(E)(ii) is reinforced by the surrounding language in other ways, too. In relevant part, § 1226(c)(1)(E)(ii) makes detention mandatory in five scenarios involving enumerated offenses: (1) "is charged with," (2) "is arrested for", (3) "is convicted of," (4) "admits having committed, and (5) "admits committing acts which constitute the essential elements of." These categories track the progression of a criminal case. Criminal cases start either with the filing of charges ("is charged with") or the arrest of a person ("is arrested for") pending the filing of such charges. Either way, section 1226(c)(1)(E)(ii) compels the Attorney General to take the person into custody. At some point, however, all charges are resolved, including, in many instances, through a conviction. Because a person who "is convicted of" a crime no longer "is charged with" that crime, the words "is convicted of" establish that detention remains mandatory following conviction.

The rest of § 1226(c)(1)(E)(ii) recognizes that charges can be resolved in other ways, too. In many state court systems, a person may enter a deferred prosecution agreement or receive a deferred judgment, often on the condition that the person admit the underlying conduct. Detention remains mandatory in those scenarios thanks to § 1226(c)(1)(E)(ii)'s inclusion of the words "admits having committed." Similarly, in some instances, plea negotiations may result in a conviction for a different crime than the one originally charged. Nonetheless, § 1226(c)(1)(E)(ii) again makes detention mandatory in many plea bargain situations by including the words "admits committing acts which constitute the essential elements of [an enumerated offense]." This means, for example, that a person who pleads guilty to "criminal mischief" after being charged with "theft" will remain subject to mandatory detention if the underlying factual admissions are sufficient to meet the elements of theft.

The point is that § 1226(c)(1)(E)(ii) recognizes that a person "is charged with" a crime (present tense) only until those charges are resolved. If the resolution is a conviction ("is convicted of") or involves the person making some other admission of guilt ("admits having committed" or "admits committing acts which constitute the essential elements of"), then § 1226(c)(1)(E)(ii) continues to make detention mandatory. By contrast, based on the recurring use of the present tense for each stage of the criminal process, the statute no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply.

Finally, although neither side focused on § 1226(c)(4) in their filings, the language of that subsection reinforces the Court's conclusion. Section 1226(c)(4) states that the Attorney General

"may release an alien described in paragraph (1)" only in connection with the witness protection and relocation program, 18 U.S.C. § 3521. The key words are "an alien described in paragraph (1)." Petitioner was "an alien described in paragraph (1)" at the time charges were filed against him, and he remained "an alien described in paragraph (1)" for as long as those charges remained pending. Once those charges were dismissed, however—and keeping in mind that nothing happened to trigger the other clauses of § 1226(c)(1)(E)(ii)—he is no longer "an alien described in paragraph (1)." Accordingly, the Attorney General has the discretion to release him in accordance with § 1226(a) and other governing law.

None of this is inconsistent with the Federal Defendants' argument that Congress intended to "cas[t] a wide net for mandatory detention" when it passed the Laken Riley Act. (ECF 9, p. 7.) This was indeed Congress's intent. Congress achieved its goal, however, by, among other things, making detention mandatory for any noncitizen who "is charged with" one of the enumerated offenses. What Congress did not do is make detention mandatory for anyone who "*was* charged with" one of those offenses (past tense) but had the charges dismissed without a conviction or some other admission of guilt. Had this been Congress's intent, it surely knew how to find the right words. The Immigration Judge erred in concluding otherwise.

   *D. The Court Will Grant in Part and Deny in Part the Petition for Writ of Habeas Corpus.*

The only remaining issue is what relief should be awarded. Petitioner asks the Court to grant outright release or, in the alternative, to order the Immigration Court to conduct a bond hearing pursuant to § 1226(a). The Court appears to have the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"). Nonetheless, in a situation where the Immigration Judge believed he lacked the authority to consider discretionary bond, the better exercise of discretion is for this Court to order a bond hearing rather than assume for itself the role of "Immigration Judge" by deciding bond or detention in the first instance. The Court also, however, will retain jurisdiction over the case to ensure compliance with this Order.

## V.    CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Petitioner's Petition for Writ of Habeas Corpus. (ECF 1.) The Federal Defendants shall provide Petitioner with a bond hearing in the EOIR within seven calendar days of this Order. The bond hearing must be conducted pursuant to 8 U.S.C. § 1226(a), not §§ 1225 or 1226(c); which is to say, the Immigration Judge may not

deny bond on the basis that detention is mandatory. Instead, an individualized assessment must be made.

**IT IS SO ORDERED.**

Dated: September 30, 2025

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE